### INGER AND M. J. LINBERG V. JOHN H. FINKS.

#### No. 602.

1. **Res Adjudicata.**—Where the record shows that a judgment was rendered upon the issue that the defendant was a tenant of the plaintiff, and therefore was estopped to deny the title of the plaintiff, such judgment is not conclusive in a subsequent action where the title is in issue, the general rule being, that a former judgment concludes all matters that under the pleadings can be properly litigated; but when it appears that a matter was not in fact adjudicated, the former recovery is not res adjudicata.

2. **Penalty for Breach of Contract.**—One who seeks to recover a penalty or stipulated sum as liquidated damages must show the existence of facts that entitle him to recover. Mere inference will not aid him; the facts must be shown. See example.

3. **Power to Sell Expires with Death of Mortgagor.**—Vendee executed to vendor a mortgage with power to sell for a stipulated sum as liquidated damages for failure to comply with the terms of payment. The death of the mortgagor abated the power, and a sale after death under it passes no title. *Chief Justice Fisher not concurring.*

4. **Limitation.**—Five years' adverse possession will not confer title unless there be continuous payment of the taxes. And a void sale breaks the chain of title required for the statute of three years. See example.

APPEAL from McLennan. Tried below before Hon. L. W. GOOD-RICH.

*Robertson & Davis,* for appellants.—1. The defense of former judgment was well pleaded, and was sufficient. 2 Black on Judg., secs. 534, 539, 540, 548, 567, 574; 1 Greenl. on Ev., sec. 535; Freem. on Judg., 174, 176, 181.

2. While it is true that conditions precedent must be performed in a power before the same can be executed, yet the performance of the same need not be proved by positive evidence. Circumstances, presumptions, and recitations in the conveyance under the power are sufficient to establish the performance of the precedent conditions. Clements v. Macheboeuf, 92 U. S., 418; Morrill v. Cone, 22 How., 75; Savings and Loan Co. v. Deering, 66 Cal., 281; Beal v. Blair, 33 Iowa, 318; Jones on Mort., sec. 1895.

3. Where party has burden of proving a negative, full and conclusive proof is not required, and such evidence as renders the existence of such negative probable is sufficient to change the burden of proof to the other party. Vigus v. O'Bannon, 6 West, 226; Tucker v. Murphy, 66 Texas, 355; Thomas v. Simmons, 1 West, 118; Dorley v. Chevalier, Dall., 555; White v. Jones, 67 Texas, 638; Garner v. Lasker, 71 Texas, 431.

4. If a deed or power of attorney may be presumed, why may not the facts, which are equivalent to a power of attorney, and which, unlike a power of attorney, would not ordinarily be evidenced by writing, more readily be presumed. If this be true, then, under the circumstance of this case, it should be presumed, or held to be established, that Cooper failed to conform to his contract with Christianson, and also failed to pay Christianson the $500—as agreed damages for which Christianson sold the land. Veramendi v. Hutchins, 48 Texas, 531; Dailey v. Starr, 26 Texas, 562; Watrous v. McGrew, 16 Texas, 514.

5. The general rule of law is, that a power of sale in a mortgage is a power coupled with an interest, and is irrevocable, and is not suspended or revoked by the death of the mortgagor. Yet, owing to the peculiar character of the administration laws of Texas, such power can not be exercised if there is administration on the estate of the decedent; but this is not true if there is no administration, and a sale made under such a power, when there was no administration, the heir or his vendees can not attack, nor could a creditor after the time for administration has been barred by the lapse of four years. Thompson v. Jones, 12 S. W. Rep., 77; Taylor v. Snow, 47 Texas, 467; White v. Jones, 67 Texas, 638.

6. The power in Cooper's deed to Christianson is one coupled with an interest, and is consequently irrevocable. On general principles the death of the mortgagor will not operate a revocation of the power; whether statutes governing estates of decedents will revoke depends upon the facts. Robertson v. Paul, 16 Texas, 474; Buchanan v. Munroe, 22 Texas, 537; Webb v. Mallard, 27 Texas, 80; McLane v. Paschal, 47 Texas, 365.

7. Fraudulent deed is a sufficient link in title under the three years' statute: Murchison v. White, 54 Texas, 78.

Deed on its face regular is not void: Fry v. Baker, 59 Texas, 404.

Discussion of void and voidable deeds: Gullett v. O'Connor, 54 Texas, 416.

A deed void, as by a married woman without joinder of her husband, will carry color of title: League v. Rogan, 59 Texas, 428.

A sale to satisfy a judgment on foreclosure, though made under an execution issued after the death of the mortgagor, can not be attacked in a collateral proceeding where there has been no administration on

the estate. Wright v. Kleyla, 2 N. E. Rep., 217; Taylor v. Snow, 47 Texas, 467; Thompson v. Jones, 12 S. W. Rep., 77; White v. Jones, 67 Texas, 641.

Judgment rendered after the death of party is not void, if the record does not show it, but will be held valid until avoided by a direct proceeding for that purpose. Mills v. Alexander, 21 Texas, 163.

Judgment against a feme couvert, as a feme sole, or against a party individually instead of as administrator, is not void, but voidable only in a direct proceeding for that purpose. Moke v. Brackett, 28 Texas, 443; Giddings v. Steele, 28 Texas, 732; Fleming v. Seeligson, 57 Texas, 524.

A void will is sufficient to sustain the three years' statute. Charlè v. Saffold, 13 Texas, 93.

A voidable link in a chain of title is sufficient to sustain the three years' statute. League v. Rogan, 59 Texas, 428.

Possession held for another not at his instance, is sufficient under the statute. Whitehead v. Foley, 28 Texas, 268.

*Pearre & Boynton*, for appellee.—1. When in a plea of res adjudicata the judgment shows affirmatively that the party against whom it is asserted was dismissed from the case before judgment, the plea is bad, for the estoppel is not mutual. Freem. on Judg., secs. 159, 261; Herm. on Estop., 37, 105.

2. A judgment in trespass to try title only binds those actually and nominally before the court, or those holding under them by title arising after said judgment. Rev. Stats., art. 4811; Stout v. Taul, 71 Texas, 438.

3. The contract in question contains mutually concurrent conditions, and before either party can claim breach on the other's part he must make demand and tender performance. 2 Suth. on Dam., 192, 202; 1 Sug. on Vend., 363; 3 Pom. Eq., 453, note 2; Cooper v. Singleton, 19 Texas, 260; Cleary v. Folger, 24 Pac. Rep., 280; Barrett v. McAlister, 11 S. W. Rep., 220.

4. The evidence shows no tender of performance, and no sufficient demand to entitle Christianson to claim damages. Critchett v. Cooper, 18 Atl. Rep., 4, 778; Eddy v. Davis, 22 N. E. Rep., 362; Getty v. Peters, 46 N. W. Rep., 1036.

5. The burden is upon the party claiming damages by reason of a breach of contract to convey to show the other's failure to perform, and his own ability and willingness to do so. 1 Dev. on Deeds, sec. 425; 2 Perry on Trusts, sec 785; Hancock v. McKinney, 7 Texas, 384.

6. The death of said Cooper revoked the power of sale in said contract, and said Christianson had no power of sale at the time he sold the land in controversy. Robertson v. Paul, 16 Texas, 472; McLane

v. Paschal, 47 Texas, 365; Peak v. Brinson, 71 Texas, 310; Abney v. Pope, 52 Texas, 288; Black v. Rockmore, 50 Texas, 88.

FISHER, CHIEF JUSTICE.—John H. Finks, appellee, brought this suit, trespass to try title, in the District Court of McLennan County, on the 22nd day of April, 1890, for lot number 1 of the subdivision of the Nancy Burwell survey, in McLennan County, Texas.   On the 1st day of November, 1890, Finks filed his first amended original petition, in which he sets up title to lot number 1 of the subdivision of the Nancy Burwell survey, and that he sold said land to W. S. Martin, made codefendant with appellants in his said suit; that the real consideration in said sale to Martin was three notes of $500 each, which were unpaid.

Inger and M. J. Lindberg filed their original answer in this cause on the 1st day of September, 1890, and their first amended original answer on the 30th day of September, 1890, in which they set up (1) a plea of res adjudicata, that the title to that part of lot 1 of the subdivision of the Nancy Burwell survey claimed by these appellants had been adjudicated between the parties to this controversy in cause number 5231, styled Inger Linberg et al. v. John H. Finks et al., in the District Court of McLennon County, on the 18th day of April, 1890; (2) they disclaimed in said answer as to that part of lot number 1 not specially set out by metes and bounds in their answer; (3) a general denial; (4) the statute of limitations of three years; (5) the statute of limitations of five years; (6) the plea of not guilty.

On November 1, 1890, appellee, John H. Finks, filed his supplemental petition, excepting to the sufficiency of appellants' plea of res adjudicata, giving three distinct reasons why said plea was not sufficient in law.

Appellants' codefendant, W. S. Martin, failed to appear and answer.

The court sustained the exceptions to the plea of res adjudicata, and rendered judgment in favor of appellee for the title and possession of the land sued for.

This court finds the following as the facts in the case:

1.  That the land in controversy is a part of the Nancy Burwell survey, and that her heir, Joshua Harris, is the common source of title.

2.  February 24, 1888, Joshua Harris and wife conveyed the land in controversy to appellee, John H. Finks.

3.  April 4, 1876, Joshua Harris conveyed to Uriah Cooper one-third of the land set apart to Annie Harris.

4.  Annie Harris was the mother of Joshua Harris, and the land in controversy was a part of the land set apart to her as an heir of Nancy Burwell.

5.  March 8, 1888, R. M. Cooper conveyed to appellee the land in controversy.

6. R. M. Cooper is a son and heir of Joshua Cooper; his mother died September 26, 1881; Joshua Cooper died February 10, 1887. There was no administration on the estate of either Joshua Cooper or wife.

7. May 30, 1876, John Christianson and Uriah Cooper entered into a contract in writing, whereby Christianson "obligates himself to make unto the said Cooper a good, valid, and sufficient deed, with usual warranties of title," to certain lands, described as situated in McLennan County, said deed to be made on the 1st day of September, 1876, upon the express consideration that Cooper, on or before that date, shall pay to Christianson the sum of $1500, and in such event, and not otherwise, Christianson by the terms of the instrument obligates himself in the sum of $500, as liquidated damages, to comply with his contract to execute a conveyance of the premises to Cooper as contemplated by the terms of the contract, and gives a lien on the land above described to secure the said $500, and empowers Cooper to sell in the event Christianson fails to comply. By the terms of the contract, Cooper obligates himself to pay to Christianson a like sum of $500 as liquidated damages in the event he should make default in the payment of said $1500, the agreed purchase price of said land, and to secure the payment of said sum of $500 Cooper gives a lien or mortgage to Christianson upon the land in controversy, and authorizes and empowers Christianson to sell and to execute to purchaser thereof a deed, etc.

8. May 1, 1877, Christianson, in the way and manner provided by the above mentioned contract, sold and conveyed by virtue of said contract the land in controversy to John L. Dyer.

9. July 27, 1878, John L. Dyer conveyed the land in controversy to Christianson.

10. The deed executed by Christianson to Dyer recites that Cooper failed to comply with his contract so made with Christianson, and that he became liable for the sum of $500, the agreed liquidated damages.

11. Appellant Inger Linberg is the only child and devisee of John Christianson. John Christianson died in 1888.

12. Christianson, during his life-time, and appellant Inger Linberg, since his death, have rendered and paid taxes on the land in suit from the date of the deed executed by Dyer to Christianson, except for the year 1888. The taxes for the year 1888 were not paid, and the land was sold and bought in by the State for the taxes due for that year. November 22, 1889, the land was redeemed by Inger Linberg.

13. January 5, 1885, John Christianson in writing leased the land in controversy to one W. S. Martin until January 1, 1886. This lease was extended to January 1, 1887. Under this lease actual possession of the land—with other lands, it seems, not claimed by Christianson or included in the lease—was taken by Martin in May or June, 1885.

No possession was shown prior to this time. After Martin's term expired, in January, 1887, he did not claim to hold as a tenant of Christianson, but it seems that he continued to use the land and remain in possession, and on April 18, 1890, in a suit number 5231, styled Inger Linberg et al. v. John H. Finks and W. S. Martin, judgment was rendered against Martin in favor of the appellees in this suit for the land, upon the fact that he (Martin) held possession of the land under a lease from Christianson.

14. At the time the land was sold by Christianson to Dyer by virtue of the contract made with Cooper, he (Cooper) was dead. No deed was tendered Cooper by Christianson for the land Christianson agreed to convey to Cooper as set out in the contract, and all that appears on this subject before Christianson sold the land was that Dyer, as the agent of Christianson, wrote to Cooper, demanding that he pay the $1500 as agreed to in the contract, or he would sell the land under the contract; that he did not send Cooper any deed, but wrote to him that Christianson would comply with his part of the contract. Witness Dyer states that his impression is that he received a reply, but does not know that he did, and if he did has no recollection of the contents. That this letter was written to Cooper about a month or six weeks before the land was advertised for sale. The land was advertised April 10, 1887.

*Opinion.*—1. It is doubtful, under the authority of Stout v. Taul, 71 Texas, 438, and Overstreet v. Root & Price, 84 Texas, 29, if the facts alleged in the plea of res adjudicata, giving to them the most liberal construction, are sufficient to preclude the appellee from maintaining this action. But, independent of this view of the question, we think no error was committed in the ruling of the court sustaining the demurrer to the plea. It does not appear from the averments of the plea that the title of the appellee litigated in the case now before the court was in issue or litigated in the cause mentioned in the plea of res adjudicata. But, upon the contrary, the record in this case shows that the title of appellee was not litigated in the cause described in the plea, and that the case was there disposed of upon the issue that Martin was a tenant of Christianson, and was therefore estopped to deny the appellants' title. The court in that case, as shown upon page 29 of the record in this cause, instructed the jury to return a verdict for the plaintiffs (appellants here), because Martin, the defendant in that case, took possession and held the land under a lease from Christianson. No issue of title was submitted to the jury, nor does it appear that any other question but that of tenancy was before the court in that case. The general rule upon this subject is, that a former judgment concludes all matters that under the pleadings can be properly litigated, but when it appears that a matter was not in fact ad-

judicated, the former recovery is not res adjudicata. Teal v. Terrell, 48 Texas, 507; James v. James, 81 Texas, 380; Reast v. Donald, 84 Texas, 649; Pishaway v. Runnels, 71 Texas, 352; Freeman v. McAninch, 87 Texas, 132, and cases there cited.

If the plea of res adjudicata could be held sufficient as a pleading, the action of the court in sustaining a demurrer to it, in the light of the record, would be harmless error. The facts as disclosed by the record, from which we infer that the title of Martin or appellee was not adjudicated in the former suit, were offered and introduced in evidence by appellants.

2. It will be observed from the facts that Christianson's title, the ancestor of appellant Inger Linberg, rests upon the contract entered into between him and Cooper. Christianson sold the land under that contract, by virtue of the clause creating the liability of Cooper for the liquidated damages agreed to be paid by him in the event he should fail to pay to Christianson the sum of $1500, the contract price of the land that Christianson agreed to convey to Cooper by his deed to that effect. The contention is, that as Cooper failed to pay the contract price of the land within the time agreed, he became liable for the amount of the penalty or liquidated damages agreed to, and Christianson by reason thereof could sell the land in controversy. The contract by its terms imposes upon each party to it mutual conditions, the performance of which is required before either can enforce it or recover the sum agreed to as liquidated damages. Cooper could not have recovered the amount agreed upon in the contract as liquidated damages in his favor until he had paid the $1500, the consideration of the land he agreed to purchase, or had made a tender thereof. Neither would Christianson be permitted to recover the amount of liquidated damages agreed to be paid by Cooper until he had executed a deed to the land, and delivered it or tendered it for delivery to Cooper. His willingness and promise to make a deed would not be alone sufficient; he must have executed a deed and tendered delivery before Cooper would be required to pay the $1500 consideration agreed upon. Under the facts this is not shown. The rule is elementary, that he who seeks to recover a penalty or stipulated sum as liquidated damages must show the existence of facts that entitled him to recover. Mere inferences will not aid him. The facts must be shown. The burden was upon those holding under Christianson to show the performance by Christianson of exact conditions imposed upon him by the contract. The rights of these parties holding under the deed executed by Christianson, as trustee, to Dyer, depend upon the existence of facts at that time that would authorize Christianson to collect and enforce against Cooper the stipulation to pay the sum agreed upon as liquidated damages. As said before, the evidence does not show the existence of such facts as would authorize

Christianson to sell the land under the contract. Therefore, we hold that he had no authority to execute a conveyance to the land.

The majority of the court also hold, that Cooper being dead at the time Christianson executed the conveyance and sold the land under the mortgage contract, his pretended sale is void.

There could be no doubt about the correctness of this holding if the estate of Cooper was in process of administration at the time, if the following decisions announce the correct rule of law on the subject: Robertson v. Paul, 16 Texas, 472; McLane v. Paschal, 47 Texas, 365; Peak v. Brinson, 71 Texas, 310; Abney v. Pope, 52 Texas, 288, and Black v. Rockmore, 50 Texas, 88. But in view of the fact that the record shows that there was no administration on the estate of Cooper, the writer expresses his doubt as to the correctness of this holding, and does not agree with the majority of the court upon this ruling. This to be considered in connection with the fact that, in the opinion of the writer, the contract of mortgage invests the mortgagee, Christianson, with such an interest in the subject mortgaged that his power of sale does not terminate upon the death of the mortgagor. In my opinion, the power of sale is one coupled with an interest.

3. It is doubtful if the evidence under appellants' plea of three and five years' limitations shows such actual and exclusive possession as would entitle them to recover. But treating the facts as showing such actual and exclusive possession as the law requires, we are of the opinion that the appellants are not entitled to recover by virtue of either the three or five years' periods of limitation. The only possession shown by appellants is traced through Martin, the tenant of Christianson. His actual possession dates from May or June, 1885. This suit was filed April 22, 1890. Besides, the taxes for the year 1888 were not paid by appellants.

Our construction of the conveyance from Christianson to Dyer leaves a hiatus in appellants' claim of title. Consequently it can not be serviceable as a muniment of title or color of title upon which to base a plea of three years' statute of limitation. 48 Texas, 531; 24 Texas, 596. Also, we are disposed to hold that the facts and circumstances existing at the time Christianson executed this conveyance did not authorize him to execute it, and that it was executed without legal authority. Consequently it is wanting in that intrinsic fairness and honesty as will authorize it to serve as a basis of limitation under the three years' statute.

The other propositions submitted we have considered, and hold they are without merit.

The judgment is affirmed.

*Affirmed.*

Delivered March 28, 1894.