## J. A. MYERS et al., Appellants, v. ALPHONSE DeLISLE et al.

### Division One, June 30, 1914.

1. **PUBLICATION: Idem Sonans: Tax Sale.** Notice by publication, in a tax suit, addressed to J. A. Myer, will not support a judgment against J. A. Myers, since the names are not *idem sonans* and there is no showing that the names Myer and Myers were a corruption of the German name Meier; therefore a sale of the land under such judgment is void.

2. **SUIT TO QUIET TITLE: Tax Sale: Action by Owner: Failure to Pay Taxes: Laches.** Where a sale of land for taxes was void for lack of notice to the owner, his failure for almost twenty years to pay taxes does not constitute laches such as will prevent him from recovering the land from purchasers under the tax judgment of whose possession and improvements he had no knowledge and in whose favor the Statute of Limitations had not run.

Appeal from New Madrid Circuit Court.—*Hon. Charles A. Killian*, Judge.

REVERSED AND REMANDED (*with directions*).

*Brewer & Riley* and *George W. Allison* for appellants.

(1) "Myers" and "Myer" are not *idem sonans*. Robson v. Thomas, 55 Mo. 581; Greer v. Lumber & Mining Co., 134 Mo. 85; Graton v. Holliday-Klotz Co., 189 Mo. 322; Wheelen v. Weaver, 93 Mo. 430; Chamberlain v. Blodgett, 96 Mo. 482; Ohlman v. Saw Mill Co., 222 Mo. 62; Weber v. Ebling, 2 Mo. App. 15; Burge v. Burge, 94 Mo. App. 15; Scarry v. Lumber Co., 233 Mo. 686; Parchman v. State, 2 Tex. App. 228; Neiderluck v. State, 21 Tex. App. 320; Humphrey v. Whitten, 17 Ala. 30; Shuck v. Moore, 232 Mo. 656. (2) Under the pleadings and proof in this case laches or estoppel

does not apply. As the plaintiffs in this case did not know of the improvements being put on the place by defendants until long after they were finished, the plaintiffs are not estopped. Hayes v. Schall, 229 Mo. 124; Stanton v. Thompson, 234 Mo. 15; Acton v. Dooley, 74 Mo. 69; Harrison v. McReynolds, 183 Mo. 542. Mere silence on the part of the plaintiffs does not estop them. Bales v. Perry, 51 Mo. 453; 3 Washburn on Real Property (3 Ed.), 75. Plaintiffs are not estopped for the further reason that defendants did know or could have known that the sale for taxes was void because the file papers which have always been on file in the office of the circuit clerk of New Madrid county since the tax suit was therein filed and the order of publication was a matter of record in said cause and showed on its face that the said sale for taxes was void. Bales v. Perry, 51 Mo. 453; Dameron v. Jamison, 143 Mo. 491.

*Brown & Gallivan* and *E. F. Sharp* for respondents.

(1) Whether or not two names are *idem sonans* is largely a matter of proof. Ohlman v. Saw Mill Co., 222 Mo. 63; State v. Hare, 95 N. C. 682, decides that "Fain" and "Fanes" are *idem sonans;* Rooks v. State, 83 Ala. 79, decides that "Geo. Rooks" and "Geo. Rux" are *idem sonans;* Williams v. State, 5 Tex. App. 226, decides that "Williams" and "William" are *idem soans;* Suirr v. State, 88 Ind. 504, decides that "Myers" and "Meyers" and "Mayer" are *idem sonans.* (2) The plaintiffs are estopped herein by laches. Williams v. Williams, 85 Pac. 90. Where one who claims title to land is guilty of gross laches and with full knowledge of his own claim allows the opposite party to expend his money or waits until the property is largely enhanced in value either from this or other causes, he

is barred by laches though not by statute. Moorman v. Talbot, 55 Mo. 392; Loomis v. Railroad, 165 Mo. 495; Kroenung v. Goehri, 112 Mo. 648; Kline v. Vogel, 90 Mo. 247. "Laches prevents a recovery where the plaintiff lies by for an unreasonable length of time waiting a rise in land or some future event to determine his course, or where by acquiescence or by sleeping upon his rights he creates the belief in others that those rights are abandoned, whereby he influences them to act on such belief, or where something has intervened whereby the party asking relief would obtain an unconscionable advantage if the relief were given." Shelton v. Horrell, 232 Mo. 374; Cochrell v. Hutchinson, 135 Mo. 75; Rutter v. Caruthers, 223 Mo. 640; Stevenson v. Smith, 189 Mo. 446; Landrum v. Bank, 63 Mo. 56; Bucher v. Hohl, 199 Mo. 330; Naddo v. Bardon, 51 Fed. 493.

BLAIR, C.—This action was commenced April 9, 1909, to ascertain and determine, under section 650, Revised Statutes 1899, the interests of the parties in and to 200 acres of land in New Madrid county.

*Action Under Sec. 650, R. S. 1899.*

The answer (1) denies the allegations of the petition; (2) avers defendants own the land; and (3) pleads the ten-year Statute of Limitation and (4) laches. From a judgment for defendants, plaintiffs appeal.

In 1890, Bettie and Charles St. Clair, for a recited consideration of $2000, conveyed the land in suit to plaintiff J. A. Myers, and on March 8, 1909, J. A. Myers and wife conveyed a one-half interest therein to plaintiff Allison.

Defendants claim under a deed from Seth S. Barnes, whose interest in the land depends upon the validity of a tax judgment and sale and deed thereunder, dated March 27, 1893. The tax deed is conceded to be regular on its face, but the proceedings

in the tax suit were offered. They disclose that the only notice of the suit was by publication directed to *J. A. Myer* instead of *J. A. Myers.*

In connection with the question as to the sufficiency of this notice certain evidence was offered which will be noticed in the course of the opinion.

Further questions arose on the evidence on the third and fourth pleas in the answer.

I. In a tax suit was the notice by publication directed to J. A. *Myer* sufficient to support a judgment against J. A. *Myers?* It is not disputed that to bind J. A. Myers by the judgment it was necessary to make him a party nor that notice *to him* was essential to that end

**Publication: Idem Sonans.**

(Chamberlain v. Blodgett, 96 Mo. l. c. 484) but it is said, and the trial court found, that the names *J. A. Myers* and *J. A. Myer* are *idem sonans,* and, therefore, the publication constituted notice and the judgment and deed are valid.

The clear weight of authority is that in a case like this the omission of a final "s" from a name is a fatal variance (29 Cyc. p. 276; 100 Am. St. Rep. 324; Scarry v. Lumber Co., 233 Mo. l. c. 689) though there are some decisions to the contrary.

In this State the general rule was applied in State v. Mohr, 55 Mo. App. 325, and a contrary view was taken by this court, the omission affecting the defendant's given name, in State v. Havely, 21 Mo. 498. All other cases we have discovered out of harmony with the general rule are criminal cases, except Stevens v. Stebbins, 4 Ill. 25, in which defendant was personally served and the question arose on an objection to the admission in evidence of a note sued on.

In Gonzalia v. Bartelsman, 143 Ill. l. c. 640, the same court which decided Stevens v. Stebbins, supra, held that in an affidavit of service of notice of a tax sale "the doctrine of *idem sonans* cannot be made to

apply to two such distinct names as Meyer and Meyers."

In Smurr v. State, 88 Ind. l. c. 506, 507, the names Meyer, Meyers and Mayer were held *idem sonans.* Not a case cited in support of this holding met the exact question as to the effect of the omission of a final "s." Further, the name Meyer was used in one count of the indictment and Meyers in another.

There are good reasons for refusing to countenance laxity in proceedings to sell land for taxes on notice by publication and they have heretofore been well stated:

"No man may judicially lose his property without his day in court. A day in court proceeds on notice. So, due process of law and jurisdiction depend on notice. By Revised Statutes, section 9303 (1899), it is ordained that tax suits shall be brought 'against the owner of the property.' By this is meant the record owner unless the fact is known, or the purchaser have notice that the record owner is not the true owner. When summons is actually served on the right individual by the wrong name, the error becomes immaterial because he has notice of the suit and may appear if he choose and plead misnomer. But absent actual notice when the law for convenience substitutes a constructive notice, the name of the individual defendant obviously becomes one of the essentials and of the very life of the notice. . . . If the law tolerated slovenliness or pranks in this regard then slovenliness and pranks might ripen into a custom and open the door to great mischief. Constructive service at best is harsh. It is service not in substance and fact, but of a sort to which the name of service is attached from necessity. That method of service, being highly technical, must be strictly pursued." [Ohlmann v. Sawmill Co., 222 Mo. l. c. 66, 67.]

In Emeric v. Alvarado, 90 Cal. 465, it was even held that, for reasons somewhat like those just quoted,

the doctrine of *idem sonans* does not apply to tax proceedings at all but that "different letters will make different names though the sound be the same."

Other cases are Chamberlain v. Blodgett, supra; Troyer v. Wood, 96 Mo. 478; and Turner v. Gregory, 151 Mo. l. c. 105, 106, cited in the Ohlmann case, supra.

To the attentive ear there is no difficulty in distinguishing between Myer and Myers, and under the applicable general rule they cannot be held *idem sonans*.

It is contended, however, that there was evidence that the two names were and are pronounced alike though spelled differently, and that this evidence justified the trial court's finding.

What the court stated he found was that the names Meyer and Meyers were *idem sonans,* or, rather, that both were corruptions of the German name Meier. One difficulty in applying in this case, on the evidence, the rule as to names which are corruptions of another, lies in the fact that the names found by the court to be corruptions of another are Meyer and Meyers and the names in question are Myer and Myers, and another difficulty is that there is neither evidence nor finding that these last are corruptions of any other.

The evidence actually is that in the town of New Madrid, where J. A. Myers had never been, some of the people were in the habit of addressing one Charles Meier as Charlie Meyers. Several of those who did so testified they did so because they thought his name was Meyers and not because they thought Meier was pronounced Meyers. There was evidence that several persons named Meyers lived in New Madrid county and that they were always called Meyers and neither Meyer, Meier, Mayer nor Myer.

Properly understood there is no evidence in the record that Meier and Meyers are customarily, colloquially or otherwise, pronounced alike.

The evidence was not of a character to add anything to the question presented by the face of the notice itself. The question was as to the names Myer and Myers and none other.

II. There was no evidence of possession for the requisite time and of the requisite character to make out a defense under the Statute of Limitations. Plaintiff Alphonse DeLisle was the only witness who testified to possession at all and his testimony was that possession was not taken until some time after he received his deed in August, 1899, and his testimony is conclusive even that possession was not continuous. This suit was brought in April, 1909.

III. Finally, it is insisted plaintiff Myers was guilty of laches barring his claim and that of his co-plaintiff who claims under him. His testimony is chiefly relied upon to support this contention. He testified he traded for the land in 1890 and got an abstract showing taxes paid until that year; that he paid the taxes in 1890 and possibly in 1891; that he then and until 1894 lived at Carthage, Missouri, and owned a great deal of land in various sections of the country, and the fact that he owned the land in suit "passed from his mind" and he paid no taxes after 1891; that in 1890 he did not regard the land as of very great value; that he had not abandoned or intended to abandon the land but had let the taxes run behind. It also appears from his testimony that the first notice he had of the tax suit was when he wrote the collector a short time before this suit was brought. This letter was prompted by an inquiry made of him by his co-plaintiff Allison as to whether he owned the land in suit. There was no evidence that the purchaser at the tax sale took possession or made any improvements. He did have a surveyor locate the corners. Defendant Alphonse De-Lisle and his brother had some timber cut and sawed

*Laches:*
*Failure to*
*Pay Taxes.*

in about 1900, 1901 and 1902. A gradually increasing portion of the tract was partially cleared until about eighty acres were about ready for cultivation but twenty or thirty of these acres had been allowed to grow up (in small timber) again and it is doubtful whether any of it was ready for cultivation in 1909. The trees had been deadened on part. Two small houses and fences (around eighty acres) costing in the aggregate not over $750 had been put upon the land but it does not appear just when. DeLisle testified he paid out about $15 per acre for cleaning up eighty acres. The land has increased in value.

It is insisted that this testimony makes out the defense of laches, and Shelton v. Horrell, 232 Mo. 358; Toler v. Edwards, 249 Mo. 1. c. 166 et seq. and several other decisions of this court are relied upon as supporting this position.

In Shelton v. Horrell, supra, the tax sale was not void but voidable, and defendant in the tax suit had notice of it; and in Toler v. Edwards, supra, the tax suit defendant had notice of the adverse claim and brought her action a considerable time later, having made no claim for about thirty years "during all which time" the land had been claimed by defendants, improvements had been put upon it, money expended in clearing it, and it had been "successively tilled and cultivated by the agents of the grantees in the chain of title running back to the sheriff's deed; the records of the sheriff's deed and court proceedings had been burned, witnesses had disappeared." Those cases are not such as that at bar. In this there was not a voidable tax sale pursuant to a judgment *rendered on notice* but a *void* tax sale pursuant to proceedings *without notice*. There was no judicial proceeding but merely a "judicial usurpation and oppression" (Troyer v. Wood, 96 Mo. 1. c. 480), by which plaintiff Myers

was in nowise affected. It is suggested he must have known taxes would be levied and if not paid his property sold to satisfy them,. and, consequently, it is said, he must be held to have had notice. The answer to this is that the record affirmatively shows the land *was not* sold for taxes—the proceedings in the alleged tax suit being an absolute nullity. Myers had the right to assume. that if a sale was attempted notice of some kind would be given and that without notice there would be no sale attempted. *Express* notice (by summons or publication) to Myers was essential to the validity of the proceedings in any tax suit.

To raise from the collector's duty to sue for delinquent taxes an *implication* of notice of a suit that the record affirmatively and conclusively shows was, in a legal and constitutional sense, never instituted at all, is a task we will not undertake. Rather are defendants who claim under the void tax proceedings, to be charged with notice of their invalidity. [Dameron v. Jamison, 143 Mo. l. c. 491, 492.]

Properly considered, the evidence on this issue shows nothing save payment of taxes, an entry under color of title and partial improvement of wild land without the knowledge of the record owner. The possession might have ripened into title by limitation in due time but that period had not elapsed.

Failure to pay taxes does not, of itself, constitute abandonment of title or of property. There was no evidence which would justify a judgment for defendant on the plea of laches.

There was no evidence supporting any defense made, and the judgment is reversed and the cause remanded with directions to the trial court to enter judgment for plaintiffs, giving defendants a lien for taxes paid as the petition offers. In a subsequent statutory proceeding (R. S. 1909, sec. 2401 et seq.) defendants'

right to recover for improvements may be tested. [Dameron v. Jamison, supra.]  *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court.  *Woodson, P. J.,* and *Lamm* and *Graves, JJ.,* concur.  *Bond, J.,* concurs in the result.